again. 517-0155. Thank you again. My name is Scott Hendricks and I represent Dan Stevens and Neil Thompson in this appeal. They appeased the court. I've asked the court to reverse a denial of my motion for a summary judgment at the trial court. In this same case, I filed a motion for a summary judgment against the Stevens' with respect to the lease agreement that they had entered into with my client for the Anna Jones Pearl property. The basis of that motion for summary judgment was the written lease agreement. At the same time, the Newmans filed a motion for summary judgment on their own behalf, principally asking the court to deny my motion for a summary judgment and to award a judgment in favor of my clients in People's National Bank. The court did exactly that. The court stated in its order of December 11, 2015, that my motion for summary judgment was moved because she was finding that my clients were stopped from asserting a judgment against the Newmans because my clients had accepted rents from Amoeba Food and allowed them to occupy the property. I'm asking this court to review that and reverse that decision for three reasons. I think the court, in her opinion, wrote that there was an assignment of the lease from the Newmans to Amoeba Foods and no such assignment took place. In their own pleadings, in their third-party complaint against People's National Bank, they assert as part of their claim that the lease was not assigned to Amigos. Therefore, the court was in error when she stated, as part of her conclusion that my clients were stopped, that there had been an assignment of the lease. The second reason is that the court, I believe, relied on some of the limited facts in the Kentucky Fried Chicken case that was cited. That was the Am National Bank versus Kentucky Fried Chicken of Southern California case in which the court extracted a couple of principles of landlord-tenant law that said that assignment of a lease releases the original lessee from the lease if it's accepted. However, in that case, if the court would review it, there were significant other factors in that case that the court did not address or the trial court did not address in her judgment order. In the Kentucky Fried Chicken case, the landlord engaged in many additional acts in that case to show that they were accepting this new lessee as its only lessee of the property, which included asking the lessee to sign documents with regard to real estate tax appeals. They asked the new lessee to sign documents with regard to a proof of claim in a bankruptcy matter, indicating that they were the lessee of the landlord in that case. Even more over the top on that is the landlord signed a release of the original lessee in that case. For those additional reasons, the appellate court said, well, this landlord has released this lessee from their original lease because of their actions. The third reason, going along with the last part of my argument about limited points, is that I referenced the case of Amalong v. Peacock in my motion, indicating what the principles of landlord-tenant law that should apply in this case. And those principles were set forth, and I've repeated those in my brief, were simply this, an original signee that assigns a lease to another party. And again, remember, in this case, that assignment never took place as admitted by the Newmans. But if that had taken place, the original signee is not released from that lease agreement. And I think the argument that the Newmans are making is, my clients have waived the assignment of provision in the contract. But all that does is prevent me from complaining about the assignment. I think they confuse the concept of privity of contract with the concept of privity of estate. They assign the contract, but they don't assign their duties or their obligation under that contract. They just assign the right to occupy the property. And along with that right to occupy the property is the privity of estate, which means the new lessee is obligated to pay the rent. But this does not release the original lessor from the lease, even if they had assigned it. It does not release them, except for in the case where there's been a clear intent to discharge the lessee, either by words, a written document, or actions. In this case, the court stated that simply because my clients purportedly accepted rent agreements, although I don't believe there's truly any evidence in the record that shows that. There's no testimony or affidavit that says that. But also because they allowed the Amigo Foods to occupy the property. That was evidence that my client, that's clear intent that my client is releasing the Newmans from liability on the lease. And it's my position, and I'm asking the court to find, that that is not enough evidence to constitute a release. You need additional factors, additional, I'll say extreme factors, like the ones in the Kentucky Fried Chicken case, to indicate an intent, a true intent to release the lessee. Not so in this case. When lease payments were not paid, what did my clients do? We sent immediate demand letters to the Newmans individually. Nothing to Amigo, nothing to New Group, to the Newmans directly. And they turned around and sent those letters to the bank, People's National Bank, saying this is your obligation under the October 17th agreement. You paid it, which obviously they did not. They sent a second demand letter to the Newmans. This is all part of my plea is in the complaint, which again they sent to the bank. My clients didn't get paid, and I filed a lawsuit to collect $15,000 in rent in this case. So I was the dog at first, now I'm the tail of this case, because they took over this case for 14 years between the bank and the Newmans. We're simply trying to collect the rent that was due my client. But back to the there being no evidence of assignment here. There's no clear acquiescence to any attempted assignment. And I would also pose to this court, there was actually no change in occupancy of this property. If the court is aware, the Newmans sold their corporate stock to Amigo Foods. They didn't sell the assets of their business, they sold their corporate stock. And that was in New Group Inc. New Group Inc. was already occupying my client's property as part of the lease agreement with the Newmans. So nobody changed. There was no leaving and entering. It was the same entity because Amigo owned the stock certificates or were buying the stock certificates of New Group. So there was no change of occupancy. There was probably no change in checks to my client because they probably were originally coming from New Group. In fact, the Newmans argue in their response to my brief that, oh, well, quite possibly that the release of them as lessees occurred back in 1998 when New Group took possession of the property, which was their corporation. And that should have been a release. But obviously not so because for the next four or five years, the Newmans paid rent to my client. And more importantly, in that October 17, 2001 agreement, they made clear that they wanted the bank to make sure my clients got paid the rent because they were on the hook personally for the rent. If you read that paragraph in that agreement, you'll see that it specifically says that that irrevocable letter of credit will be divided with a portion of the letter of credit to remain to assure repayment of a lease dated September 1, 1998 between Dan Stevens, Robert Newman, and Terry Newman. If they're complaining that they are not on the lease or obligated under the lease, they would need that provision in the agreement they had with People's National Bank. So I believe that the court, the lower court, again, who I have a lot of respect for, just because she would not accept my underlying principles of landlord-tenant law as set forth in Amalong v. Peacock because she was advised by Newman's counsel that opinions prior to 1934 by appellate courts have no precedential value. It doesn't mean the law is not good. The law was good for two reasons. One, it was a proper statement of landlord-tenant law. Number two, the law that was cited in the Amalong case were direct cites from four or, excuse me, five Illinois Supreme Court decisions. So each of those had precedential value. So the law hadn't changed. But because of the position that opinions prior to 1934 of appellate courts have no precedential value, the court, I'll say, refused or ignored my arguments under the Peacock case. I'm asking this court to look at those opinions and come to the conclusion that I did, which is also adopted by the only law in practice section of landlord-tenant law, that those rules still apply today. Those principles that an assigned or a lease is not released when they assign a lease or not released from their original obligation unless there's a clear intent, either by written document or clear actions by a landlord, to so release them. And for those reasons, I'm asking this court to reverse the trial court in basically on my motion for summary judgment and granting my motion for summary judgment, or at least remand it back to court to see, to have a hearing with the landlord-tenant law. With regard to whether there was additional actions by my clients that would indicate a release of the Newmans from their written obligation under the lease agreement. Now, again, I want to make clear to the court that I'm not trying to recover two times from my client. I have a judgment against People's National Bank, which I believe is a proper judgment because they did agree to pay my clients from that line of credit, but they converted those funds for their own benefit. And so I think the court was correct in making that award. I'm simply asking this court to recognize that the Newmans are still obligated under their lease agreement with my clients, along with People's National Bank because of the agreement they reached with People's National Bank, but I don't believe that they're absolved from liability. So I'm asking the court to either reverse that summary judgment and award me summary judgment against the Newmans, or alternatively, remand it to the court so we can have a hearing on these other issues, whether there was truly a release in this case. Thank you. That was time for the vote. I think his argument admits that. In the prior argument before this court, and again in the argument moments ago, he tells you that the trial court got it right when she granted summary judgment on the Newmans' motion at trial. Indeed, he has asked you to sustain that verdict with your decision on appeal. That judgment granted him everything that he had sought by way of relief at the trial court level, and as he has noted before you, he is simply not entitled to a double recovery in this case. And so for the reasons argued by Mr. Hendricks, the court should do what he asked with respect to the bank's argument, the judgment against the bank that we sought, sustain that verdict and deny his motion. And there are two principal reasons why I believe that to be the case. The first, as I've noted, the only challenges raised to the judgment against the bank have been those with regards to our ability to file the motion in the first place. Whether Stevens and Thompson were actually third-party beneficiaries under the October 16, 2001, agreement that is much at issue in the proceedings now before you and that were previously before you as well, and whether or not there was a right by Stevens and Thompson to have amended their complaint. And I want to be clear about this. The amendment of the complaint came after the grant of summary judgment, but it did go well before the trial and the final judgment in this case. And so it did not arise after a final judgment in this case, but before that. As Mr. Hendricks argues, and I agree, there's zero question that Stevens and Thompson's were third-party beneficiaries under that agreement. It specifically names not just one of them, but identifies the lease itself by direct reference. It is an assurance of payment. It is not an indemnification agreement, or otherwise it puts the bank on the line for making that payment. So, and as argued previously, there's no question but that they have the right under 616 to amend their complaint. It was timely filed. I was there in the courtroom. The record reflects there were no objections whatsoever to that motion to amend. And so it was properly granted, and any suggestion to the contrary has clearly been waived. So there is just no question that the judgment against the bank is proper and should be affirmed. As to the right and entitlement to judgment against my client, I believe there is a reason why Mr. Hendricks cites to case law from the early 30s and indeed the 1800s, and that's because it was a different day and a different age. And at that point, I don't think that there is any question that our courts recognized a large distinction between the privity of estate and privity of contract in the context of lease agreements. There was a notion that the privity of contract was more personal to the parties to that contract. But that has clearly not been the law of this state for some time. In the case of Leitch v. New York, 388L236, as early as 1944, our courts have noted the changes, and that where a landlord tenders or permits by acquiescence or otherwise both the occupancy and the acceptance of rents, he does in fact forfeit it. And if you look at the case law, the distinction between privity of estate and privity of contract is no different. Did they agree to accept Amigo as an occupant, and did they agree to accept rents? And it is clear that they did. My clients turned all of those properties over on April 1st of 2001 through the stock sale, as he noted, and they occupied those premises thereafter. And so for a period of well over a year, the successor to New Group Inc. occupied those premises and made the rent payments at a time at least nine months prior, they changed the name of the corporation from New Group Inc. to Amigo Food Services. He acknowledges that in his argument before you. The one thing he overlooks, however, by acknowledging that New Group occupied the premises from very early on in the process, and we raise this on our brief, New Group's not a tenant. They're not on the lease. And so it's clear that whatever objection they had to somebody other than the tenants occupying those premises, they didn't raise it for many, many, many years during the course of the tenancy. And so whether it is by virtue of the right of occupancy or by virtue of the right to obtain rents, they acquiesced in best circumstances to first New Group occupying and paying rents, and then Amigo occupying and paying rents. And the trial court so found and properly found in that regard. I would note also that the court found their motion to be moot in denying it and did so for precisely the reason that I've noted. They had a judgment, and it was a valid judgment. That judgment should be sustained. The trial court's judgment and rulings concerning Stevens and Thompson's motion for summary judgment should also be sustained. And I see somebody looking furiously at a book. If there's a question, I'll pause for a moment. I have a question. Yes, sir. I'm answering my own question. Okay, very good. That's easier on me. Is there not a question of factor? You talked about a bunch of facts, but apparently there are no facts. No, it was the obligation of Stevens and Thompson's to raise an issue of fact in response to our motion for summary judgment, and they simply did not do that. No one has ever denied in any pleading before the trial court that I'm aware of, Justice, that they did not accept those rents. And I think Mr. Hendricks has again acknowledged that before you today. There's no question of record in the arguments before the trial court or the pleadings before the trial court that Bob and Terry Newman are NG1 land trusts. We're never the occupants of that building. The lease itself acknowledges that they were going to operate a Taco John franchises and change the facility. And in the pleadings, in the brief, in fact, if you look at their brief, they acknowledge that New Group became the occupant of the building. So no, I do not believe that there was any issue of fact that was presented to the trial court or raised with the trial court. Thank you for your time and patience. Thank you, Your Honor. You asked the question whether there were questions of fact in this case, and I think there are numerous to determine whether my clients released them. His response was, well, if we go back and New Group Inc. had been occupying it and the Newmans were not occupying, maybe there was a prior release. I think that that infers to me that there was an agreement between my clients, the Newmans, to allow this other party to occupy the property and that they were still obligated under the lease. Otherwise, there would be no reason to have that agreement with People's National Bank to assure the lease payments between my client and the Newmans. They wouldn't have moved to that unless they were personally obligated under that lease. So I think their argument works against that. There's no prohibition that I receive two judgments in favor of my client in this case. I think the prohibition is I can't collect twice. I don't have any problem with having a judgment against People's National Bank and against the Newmans. Obviously, that's quite common in many cases, so I don't think that there's any prohibition to that. My worst fear in this case is that this Court reverses the judgment against People's National Bank in my client's favor and affirms the trial court's judgment in favor of the Newmans and against my client's unemotional presumed judgment, which means that something that's been agreed to since November 22, 2002, that my clients were due rent, would never be collected in this case because I would be shut out on both ends of that. Clearly, People's National Bank agreed to pay this as part of the agreement with the Newmans. Clearly, the Newmans agreed to pay the rent to my client under the lease agreement. I believe that those judgments are correct. If not, I represent a lot of landlords and sometimes tenants. My advice to my client would be go find a bankrupt entity and put them in your location and have them write four or five checks to your landlord, and you're released from your lease obligation to this landlord that may be ten more years because that's what Illinois law says. I don't believe that's what Illinois law says. Apparently, Illinois law in practice has it wrong then if the law has changed because they follow the same or cite the same principles that I cited in my brief that came out of the Amalog and Peacock case versus Peacock case. So I believe that the obligation is still there, but at best, we should be allowed to present evidence that there was no affirmative action on my client to release the Newmans from their lease obligation. And I'm asking the Court to reverse that part of the decision on that basis and to either remand it or simply reverse it and grant some re-judgment in favor of the plaintiffs in this case. Thank you. Thank you. The Court will take the matter under consideration. And I wish you an early and good course.